# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Avery*, 2012 IL App (1st) 110298

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JACQUES AVERY, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-11-0298 |
| Filed<br>Rehearing denied | June 21, 2012<br>July 24, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The decision of the Illinois Supreme Court in *White* did not apply retroactively to defendant's claim on appeal from denial of a *pro se* postconviction petition that the sentence imposed on him pursuant to a guilty plea to first degree murder for the shooting of the victim was void because it did not include a firearm enhancement, since the new rule in *White* merely mandated the application of the firearm enhancement provision of the murder statute anytime the factual basis of a plea agreement included the use of a firearm and it did not affect the integrity or reputation of the judicial system. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 03-CR-1729; the Hon. Dennis J. Porter, Judge, presiding. |
| Judgment | Affirmed; mittimus corrected. |

Counsel on         Michael J. Pelletier, Alan D. Goldberg, Laura A. Weizeorick, and Maria
Appeal             A. Harrigan, all of State Appellate Defender's Office, of Chicago, for
                   appellant.

                   Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Miles
                   J. Keleher, and Sheilah O'Grady-Krajniak, Assistant State's Attorneys,
                   of counsel), for the People.


Panel              JUSTICE FITZGERALD SMITH delivered the judgment of the court,
                   with opinion.
                   Justices Pucinski and Sterba concurred in the judgment and opinion.

**OPINION**


¶ 1     The defendant, Jacques Avery, was charged with multiple counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2), (a)(3) (West 2000)) and one count of attempted armed robbery (720 ILCS 5/8-4, 18-2 (West 2000)) for his involvement in the shooting of the victim, Eduardo Flores. The defendant pleaded guilty to one count of first degree murder in exchange for a 33-year sentence and the dismissal of the remaining charges. The defendant subsequently filed a *pro se* motion to withdraw his guilty plea, which was rejected by the circuit court following a hearing. After the defendant's conviction and sentence were affirmed on appeal (see *People v. Avery*, No. 1-07-3360 (2009) (unpublished order pursuant to Supreme Court Rule 23), *appeal denied*, 235 Ill. 2d 591 (2010)), the defendant filed a *pro se* petition for postconviction relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2006)). In that petition, the defendant made several allegations, including that he was denied his constitutional right to effective assistance of counsel when: (1) his postplea counsel failed to introduce any objective evidence of the defendant's learning disability at the hearing on the defendant's motion to withdraw his guilty plea; (2) his appellate counsel failed to raise postplea counsel's ineffectiveness; and (3) his trial counsel failed to investigate the factual basis of his plea, where the defendant had alleged that the police coerced a number of the State's witnesses to present evidence against him. The circuit court summarily dismissed the defendant's *pro se* petition as frivolous and patently without merit and the defendant now appeals. On appeal, the defendant abandons the contentions raised in his *pro se* petition and, for the first time, argues that we should permit him to withdraw his guilty plea and proceed to trial because his conviction and sentence are void under the recent decision of our supreme court in *People v. White*, 2011 IL 109616. For the reasons that follow, we disagree with the defendant and affirm the judgment of the circuit court.

¶ 2                                    I. BACKGROUND

¶ 3         On December 10, 2002, the victim Eduardo Flores was shot and killed as he was sitting in the driver's seat of his delivery van. In January, the defendant was arrested in connection with the shooting and indicted with 15 counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2), (a)(3) (West 2000)) and 1 count of attempted armed robbery (see 720 ILCS 5/8-4, 18-2 (West 2000)).

¶ 4         On April 10, 2007, the defendant and the State entered into a negotiated plea agreement. The defendant pleaded guilty to one count of first degree murder in exchange for a sentence of 33 years' imprisonment and the dismissal of all remaining charges. Count I of the indictment to which the defendant pleaded guilty specifically alleged:

> "Jacques Avery committed the offense of first degree murder in that he, without lawful justification, intentionally or knowingly shot and killed Eduardo Flores while armed with a firearm ***."

¶ 5         Before the defendant accepted the plea, the circuit court admonished him in accordance with Illinois Supreme Court Rule 402 (Ill. S. Ct. R. 402 (eff. July 1, 1997)). The court advised the defendant that by pleading guilty to first degree murder, he faced a sentence between 20 and 60 years in prison, followed by 3 years of mandatory supervised release (hereinafter MSR). The defendant indicated that he understood the charge, the terms of the plea agreement and the potential penalties.

¶ 6         The circuit court further advised the defendant that by pleading guilty, he was giving up his rights to a bench or jury trial. The court informed the defendant that if he chose to proceed with a trial, he would have the right to be present at trial, to call witnesses in his own defense and to confront the witnesses against him. The court also informed the defendant that if he proceeded to trial he had a right to testify on his own behalf if he chose to do so. The defendant stated that he understood all these rights and that he was freely and voluntarily relinquishing them.

¶ 7         The circuit court next asked the defendant if anybody had threatened or promised him anything (aside from the negotiated plea agreement) in return for his plea of guilty. The defendant responded in the negative. The circuit court also asked the defendant if he had any questions for the court and the defendant indicated that he did not.

¶ 8         The State then proceeded with the factual basis for the defendant's plea. The State indicated that if the case were to proceed to trial the facts would show that on December 10, 2002, at 4724 West Ohio Street in Chicago, the defendant ordered a pizza delivery from Guy's Pizza to a series of addresses culminating at 4732 West Ohio Street. When the victim, Eduardo Flores, arrived to deliver the pizza, the defendant walked up to his delivery van and attempted to "stick him up." The victim tried to drive away but the defendant shot him. The bullet from the defendant's gun lacerated the victim's liver, killing him.

¶ 9         According to the State, the facts would further show that the defendant was using the cell phone of an individual by the name of Mr. Williams, which is the name that the defendant used when he ordered the pizza. The evidence would further establish that the defendant's fingerprints matched those lifted from inside the victim's delivery van. In addition, eyewitnesses would identify the defendant as the individual who committed the offense.

¶ 10    After defense counsel stipulated to the aforementioned facts, the circuit court accepted the defendant's plea of guilty on count I of the indictment and nol-prossed the remaining charges. The circuit court then sentenced the defendant to 33 years in prison, assessed costs of $545 and credited the defendant for 1,574 days in jail.

¶ 11    On April 20, 2007, the defendant filed a *pro se* motion to withdraw his guilty plea as well as a motion for new counsel. The defendant alleged, *inter alia*: (1) that he was misled to believe that he would only have to serve 50% of his 33-year sentence; (2) that he did not understand the plea proceedings because of his learning disability and (3) that his trial counsel was ineffective. The circuit court appointed new counsel to represent the defendant on his motion to withdraw his guilty plea. That attorney filed a certificate pursuant to Supreme Court Rule 604(d) (Ill. S. Ct. R. 604(d) (eff. July 1, 2006)), attesting that she had consulted with the defendant, reviewed his file and the transcripts of the guilty plea and sentencing proceedings, and that she had determined that no amendments to the motion were necessary.

¶ 12    On November 8, 2007, the circuit court conducted a hearing on the defendant's motion to withdraw his guilty plea. At the hearing, the defendant testified that defense counsel representing him at the plea hearing told him that under the plea agreement he would serve only 50% of his 33-year sentence. Defense counsel denied ever telling the defendant that he would serve only 50% of his sentence. Rather, defense counsel testified that both at his first meeting with the defendant, as well as on the date of the guilty plea, he advised the defendant that the defendant would have to serve 100% of his sentence. Defense counsel explained that the defendant was charged with personally discharging a firearm and initially faced a minimum sentence of 45 years in prison. As a result, defense counsel approached the prosecutor and proposed that the defendant solely be charged with murder, which carried a sentence between 20 to 60 years' imprisonment. Defense counsel stated that he was aware that the defendant faced a minimum sentence of 45 years at 100% and that he reached an agreement with the State for the sentence of 33 years. Defense counsel told the defendant that the minimum would be 45 years if they went to trial, but that they could try to plead to less if the State dismissed the "personally discharged" count.

¶ 13    Defense counsel also testified that he never observed the defendant to be confused or to have trouble understanding the legal process. He therefore never considered ordering a behavioral clinical exam for the defendant.

¶ 14    After hearing all the testimony and arguments by the parties, the circuit court denied the defendant's motion to withdraw his guilty plea, finding that there was no credible evidence to support any of the defendant's allegations.

¶ 15    The defendant appealed the trial court's dismissal of his *pro se* motion to withdraw his guilty plea. On appeal, he asserted that his guilty plea was void because his 33-year sentence fell below the minimum sentence required by statute for first degree murder, while armed with a firearm. See *People v. Avery*, No. 1-07-3360 (2009) (unpublished order pursuant to Supreme Court Rule 23), *appeal denied*, 235 Ill. 2d 591 (2010). The appellate court rejected the defendant's argument and upheld the plea agreement. See *Avery*, No. 1-07-3360, slip op. at 4-7. In doing so, the court found that although "the factual basis [proffered at the plea

hearing] supported a finding of first degree murder while armed with a firearm," "it was the understanding of the parties that [the defendant] was pleading guilty to first degree murder without an enhancement." The court further noted that first degree murder is a lesser included offense of first degree murder while armed with a firearm, and that the defendant's sentence was therefore proper. See *Avery*, No. 1-07-3360, slip op. at 4-5.

¶ 16    On October 28, 2010, the defendant filed a *pro se* petition for postconviction relief pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2006)). Therein the defendant first alleged that he was deprived of his constitutional right to the effective assistance of trial counsel where during his plea proceedings defense counsel failed to investigate the factual basis of his plea. The defendant specifically asserted that the police coerced a number of the State's witnesses to present damaging evidence against him. Second, in his *pro se* petition, the defendant alleged that he was deprived of his right to the effective assistance of postplea counsel where his independent postplea counsel failed to introduce any evidence of the defendant's learning disability at the hearing on the defendant's motion to withdraw his plea. Finally, the defendant alleged that his appellate counsel was ineffective for not raising postplea counsel's ineffectiveness.

¶ 17    In support of his petition, the defendant attached several documents, including: (1) his own affidavit; (2) an affidavit of fellow inmate Jonathon Meskauskas; (3) excerpts from the transcript of his plea proceedings and from the hearing on his motion to withdraw the guilty plea; and (4) two reports from York Alternative High School and Stateville Correctional Center, documenting the defendant's learning disabilities.

¶ 18    On December 20, 2010, the circuit court summarily dismissed the defendant's *pro se* petition. In a written order, the circuit court explained that the defendant's claim regarding defense counsel's ineffectiveness in failing to investigate the factual basis of the defendant's plea was unsupported by any documents, affidavits, records or other evidence. The court similarly dismissed the defendant's claim that postplea counsel failed to present objective evidence of his learning disability. The court first found this claim to be waived as it was based on the record and had not been raised on direct appeal. The court further found this claim to be rebutted by the record, which included testimony from the defendant and statements from postplea counsel that she investigated the defendant's learning disability and did not think that additional evidence on the issue was necessary. Finally, the circuit court dismissed the defendant's claim of ineffective assistance of appellate counsel for failure to challenge the voluntariness of his plea, as having no basis in law. The defendant now appeals.

¶ 19                                    II. ANALYSIS
¶ 20                  A. Whether the Defendant's Sentence and Plea Are Void
¶ 21    On appeal, the defendant abandons the issues raised in his *pro se* petition and claims for the first time that we should permit him to vacate his guilty plea and proceed to trial because his conviction and sentence are void under the recent decision of our supreme court in *People v. White*, 2011 IL 109616.

¶ 22    In *White*, the defendant was charged with first degree murder, armed robbery and

attempted armed robbery in connection with the shooting of a taxi cab driver. *White*, 2011 IL 109616, ¶ 3. The defendant pleaded guilty to first degree murder and possession of contraband in a penal institution in exchange for consecutive prison sentences of 28 and 4 years, respectively. *White*, 2011 IL 109616, ¶ 4. The factual basis for the plea established that a firearm was used in the commission of the murder offense. *White*, 2011 IL 109616, ¶ 4. Specifically, the parties stipulated that if the case proceeded to trial the evidence would show that the defendant and the codefendant planned to rob the taxi driver and were both inside the taxi when the driver was shot in the temple with a handgun. It was further stipulated that after the driver was shot, the defendant took the handgun from the codefendant and put it in his back pocket. *White*, 2011 IL 109616, ¶ 6.

¶ 23    The defendant subsequently filed motions to withdraw his guilty pleas. *White*, 2011 IL 109616, ¶¶ 8-9. In addition to arguing that he did not understand the implication of pleading guilty, the defendant also alleged that he was not properly admonished about the sentencing range. *White*, 2011 IL 109616, ¶ 9. The defendant specifically argued that he was subject to the 15-year mandatory firearm enhancement provision of the first degree murder statute (see 730 ILCS 5/5-8-1(a)(1)(d)(i) (West 2004)) for being armed with a firearm while committing the offense, and that he was therefore subject to a 35- to 70-year prison sentence rather than a 20- to 60-year sentence. *White*, 2011 IL 109616, ¶ 9. Accordingly, the defendant argued that the 28-year sentence he received, which was below the mandatory 35-year minimum, was not authorized by statute but was void, and that his plea agreement should be vacated. *White*, 2011 IL 109616, ¶ 9.

¶ 24    The trial court disagreed with the defendant and denied his motion to withdraw his guilty plea, but the appellate court reversed. *White*, 2011 IL 109616, ¶¶ 11-12. Our supreme court agreed with the appellate court, holding that the defendant's sentence was void. *White*, 2011 IL 109616, ¶ 20. In doing so, our supreme court in *White* first reiterated that courts may not impose a sentence inconsistent with the governing statutes even where the parties and trial court agree to that sentence. *White*, 2011 IL 109616, ¶ 20. As the court explained:

"Once a trial court accepts a plea of guilty, it is the duty of the court to fix punishment. [Citations.] We have 'repeatedly recognized the legislature has the power to prescribe penalties for defined offenses, and that power necessarily includes the authority to prescribe mandatory sentences, even if such sentences restrict the judiciary's discretion in imposing sentences.' [Citation.] A court does not have authority to impose a sentence that does not conform with statutory guidelines [citations] and a court exceeds its authority when it orders a lesser or greater sentence than that which the statute mandates [citation]. [Citation.] In such a case, the defendant's sentence is illegal and void. [Citation.]" *White*, 2011 IL 109616, ¶ 20.

¶ 25    The court in *White* then specifically rejected the State's theory that the intent of the parities to agree to a murder conviction without the sentencing enhancement was controlling. *White*, 2011 IL 109616, ¶¶ 22-26. The court reasoned that although the State can choose to negotiate away the firearm element when a defendant is charged with armed robbery, and instead charge him with the lesser offense of robbery, there is no similar separate offense of " 'armed murder' " or " 'enhanced murder' " that allows a similar negotiation on a murder charge. *White*, 2011 IL 109616, ¶ 26. As the court explained: "In enacting section 5-8-

1(a)(1)(d)(i), the legislature took away any discretion the State and trial court had to fashion a sentence that does not include this mandatory enhancement." *White*, 2011 IL 109616, ¶ 26.

¶ 26    The court then concluded that since the factual basis for the defendant's plea established that the victim died of a gunshot wound, the 15-year sentencing enhancement was mandatory and the defendant's 28-year sentence, which did not contain the enhancement, was void. *White*, 2011 IL 109616, ¶ 26. Accordingly, the supreme court remanded the case to the trial court with directions to permit the defendant to withdraw his guilty plea. *White*, 2011 IL 109616, ¶ 29.

¶ 27    In the present case, citing to *White*, the defendant contends that just as the sentence of the defendant in *White*, his sentence here is void as it failed to comply with the mandatory firearm enhancement provision of the first degree murder statute (see 730 ILCS 5/5-8-1(a)(1)(d)(i) (West 2004)), which dictated that the minimum sentence for his charge of first degree murder while armed with a firearm be 35 years' imprisonment. The defendant argues that under *White*, our supreme court has removed the State's ability to negotiate around the mandatory firearm enhancement provision (730 ILCS 5/5-8-1(a)(1)(d)(i) (West 2004)) and that the decision in *White* applies retroactively to render his sentence and, thus, his guilty plea void.

¶ 28    The State initially contends that the defendant has waived this claim for purposes of appeal by failing to raise it in his postconviction petition. The State contends that our review is limited to those issues actually raised in the *pro se* petition. We acknowledge that, in general, a defendant must present an issue in his postconviction petition in order to preserve it for appeal. See *People v. Jones*, 211 Ill. 2d 140, 148 (2004) (" '[t]he question raised in an appeal from an order dismissing a post-conviction petition is whether the allegations *in the petition*, liberally construed and taken as true, are sufficient to invoke relief under the Act.' (Emphasis added.) Thus, any issues to be reviewed must be presented in the petition filed in the circuit court." (quoting *People v. Coleman*, 183 Ill. 2d 366, 388 (1998))); see also *People v. Cathey*, 2012 IL 111746 (holding that appellate court erroneously reached the issue of a prior ruling's retroactive application to cases on collateral review when that issue was not raised in the defendant's postconviction petition). However, our supreme court has repeatedly held that this rule of waiver does not apply to a claim alleging a void judgment or sentence, neither of which is subject to waiver and either of which "may be attacked at any time or in any court, either directly or collaterally." *People v. Thompson*, 209 Ill. 2d 19, 25 (2004). Since the defendant here solely alleges that his conviction and sentence are void, we will address the merits of that claim.[1]

_____

[1]We note that in addressing this issue we find relevant that although the defendant did not raise the issue in his postconviction petition, he did raise it on direct appeal, specifically asserting that his guilty plea was void because his 33-year sentence fell below the minimum sentence required by statute for first degree murder while armed with a firearm. That claim, however, was rejected by the appellate court, before our supreme court's decision in *White*. See *People v. Avery*, 1-07-3360 (2009) (unpublished order pursuant to Supreme Court Rule 23), *appeal denied*, 235 Ill. 2d 591 (2010). After the rejection of his claim by both the circuit and appellate courts, the defendant had no reason to believe that the issue remained meritorious so as to justify reraising it in his

¶ 29    The State alternatively contends that *White* presented a new rule of law and thus should not apply retroactively to the defendant's conviction and sentence, which were finalized before the decision in *White* was announced. The State further points out that *White* does not apply to collateral proceedings such as the instant case. In the alternative, citing to *People v. Donelson*, 2011 IL App (1st) 092594, the State argues that the defendant should be equitably estopped from withdrawing his plea, given the prejudice to the State that would otherwise result. For the reasons that follow, we agree with the State.

¶ 30    We begin by addressing whether *White* applies retroactively to the defendant's cause. As a general rule, the United States Constitution neither mandates nor prohibits the retroactive application of new constitutional rules of criminal procedure on collateral review. *People v. Kizer*, 318 Ill. App. 3d 238, 244 (2000) (citing *Linkletter v. Walker*, 381 U.S. 618, 629 (1965)). In *Teague v. Lane*, 489 U.S. 288 (1989), the United State Supreme Court set forth the procedure for deciding the applicability of a new rule on *habeas corpus* collateral review, which our supreme court expressly adopted as applicable to new rules under the Post-Conviction Hearing Act. See *People v. Flowers*, 138 Ill. 2d 218, 237 (1990). According to *Teague*, a new rule should always be applied retroactively to cases on direct review, but should never be applied retroactively on collateral review, barring exceptional circumstances. See *Teague*, 489 U.S. at 305-06.

¶ 31    "*Teague* sets out a three-step process for deciding the applicability of a new rule on collateral review." *Kizer*, 318 Ill. App. 3d at 245-46 (citing *O'Dell v. Netherland*, 521 U.S. 151, 156 (1997), and *Teague*, 489 U.S. at 301).

¶ 32    "First, the court determines the date upon which the defendant's conviction became final." *Kizer*, 318 Ill. App. 3d at 246 (citing *Teague*, 489 U.S. at 301). " 'A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied.' " *Kizer*, 318 Ill. App. 3d at 246 (quoting *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994)).

¶ 33    "Second, the court determines whether the constitutional rule sought by the defendant existed when the conviction became final." *Kizer*, 318 Ill. App. 3d at 246 (citing *O'Dell*, 521 U.S. at 156). "If the rule existed at the time the defendant's conviction became final, it is not a new rule." *Kizer*, 318 Ill. App. 3d at 246. "In that case, the rule is applied on collateral review, since it was the law that should have been utilized in the first place." *Kizer*, 318 Ill. App. 3d at 246. "If the rule sought by the defendant is new, however, it is generally not to be applied on collateral review." *Kizer*, 318 Ill. App. 3d at 246. According to the *Teague* plurality, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." (Emphasis in original.) *Teague*, 489 U.S. at 301.

¶ 34    Third, *Teague* directs that if the rule is new, the court must determine whether it falls within one of two narrow exceptions to the *Teague* doctrine: (1) whether the rule in question places an entire category of primary conduct beyond the reach of the criminal law, or (2)

----

postconviction petition.

whether the new rule requires the observance of those procedures that are implicit in the concept of ordered liberty, *i.e.*, the new rule must be aimed at improving the accuracy of trial and be of such importance that it alters our understanding of the bedrock procedural elements essential to a fair trial. *Kizer*, 318 Ill. App. 3d at 246-47 (citing *Sawyer v. Smith*, 497 U.S. 227, 241 (1990)). "Unless one of the exceptions applies, the new rule should not be utilized on collateral review." *Kizer*, 318 Ill. App. 3d at 246.

¶ 35    In the present case, the defendant asserts that *White* applies retroactively because it did not set forth a new rule but rather simply interpreted existing law. For the reasons that follow, we disagree.

¶ 36    We begin by noting that the parties do not dispute that the defendant's conviction was finalized before our supreme court decided *White*. See *Kizer*, 318 Ill. App. 3d at 246 (" 'A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of *certiorari* has elapsed or a timely filed petition has been finally denied.' " (quoting *Caspari v. Bohlen*, 510 U.S. at 390)). The defendant entered his guilty plea on April 10, 2007. The plea and the defendant's sentence were affirmed on direct appeal on November 6, 2009. The defendant filed his *pro se* postconviction petition on October 28, 2010, and that petition was summarily dismissed on December 20, 2010. The decision in *White* was published on June 16, 2011, six months after the defendant's *pro se* petition was dismissed.

¶ 37    We next consider whether *White* announced a new rule of law. In *Teague* the Supreme Court acknowledged that it is often difficult to determine when a new rule is announced, but instructed that, in general "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague*, 489 U.S. at 301. Since *Teague*, the United States Supreme Court has had ample opportunity to explain the scope of the "new rule" concept. In *Butler v. McKellar*, 494 U.S. 407, 415 (1990), the Supreme Court instructed that "the fact that a court says that its decision is within the 'logical compass' of an earlier decision, or indeed that it is 'controlled' by a prior decision, is not conclusive for purposes of deciding whether the current decision is a 'new rule' under *Teague*." Further, in *Saffle v. Parks*, 494 U.S. 484, 488 (1990), the Supreme Court stated that a decision constitutes a new rule unless "a state court considering [the] claim at the time [the] conviction became final would have felt compelled by existing precedent to conclude that the rule *** was required by the Constitution."

¶ 38    In *Flowers*, our supreme court explicitly adopted the *Teague* definition for a "new rule" holding that " 'a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.' [Citation.]" *Flowers*, 138 Ill. 2d at 239-40 ("if prior to the rule's being established there was a significant difference of opinion on the issue in the lower courts, this would indicate that a decision is a new rule and not merely an application of an earlier decision to a different set of facts. [Citation.]"); see also *Kizer*, 318 Ill. App. 3d at 246 (" 'Few decisions on appeal or collateral review are "*dictated*" by what came before. Most such cases involve a question of law that is at least debatable, permitting a rational judge to resolve the case in more than one way. Virtually no case that prompts a dissent on the relevant legal point, for example, could be said to be

"*dictated*" by prior decisions.' (Emphasis in original.)" (quoting *Teague*, 489 U.S. at 333 (Brennan, J., dissenting, joined by Marshall, J.))).

¶ 39    Applying these principles to the present case, we are compelled to conclude that *White* did, in fact, announce a new rule. In that respect, we note that prior to the decision in *White*, there was confusion as to whether the State could, in its discretion, negotiate pleas that did not include the firearm enhancement for first degree murder, even where the factual basis for the plea included the use of a firearm in the commission of the offense, since it was within the State's discretion to determine what charges to pursue. See, *e.g.*, *People v. Jamison*, 197 Ill. 2d 135, 161 (2001) ("It has long been recognized by this court that the State's Attorney is endowed with the exclusive discretion to decide which of several charges shall be brought, or whether to prosecute at all."). The lack of clarity in the law prior to *White* is most notably evidenced in this court's ruling on the defendant's direct appeal. See *Avery*, No. 1-07-3360. As already noted above, in that appeal, the defendant contended that his guilty plea was void because his 33-year sentence fell below the minimum sentence required by statute for first degree murder while armed with a firearm. The appellate court disagreed with the defendant and held that his sentence was not void, despite not including the firearm enhancement, because "although defendant entered a negotiated guilty plea to a charge of first degree murder while armed with a firearm, it was the understanding of the parties that he was pleading guilty to first degree murder without an enhancement." *Avery*, No. 1-07-3360, slip. op. at 4. The appellate court further noted, contrary to what *White* would later hold, that the defendant's sentence was not void because first degree murder is a lesser included offense of first degree murder while armed with a firearm. *Avery*, No. 1-07-3360, slip. op. at 4.

¶ 40    When our supreme court decided *White* it changed the law, specifically holding that the first degree murder firearm enhancement is automatically triggered when it is part of the factual basis for the underlying offense, regardless of whether the State seeks to pursue it as an aggravating factor. See *White*, 2011 IL 109616, ¶ 26 ("In enacting section 5-8-1(a)(1)(d)(i), the legislature took away any discretion the State and trial court had to fashion a sentence that does not include this mandatory enhancement."). *White*, therefore, represented a sharp departure from existing case law and must be construed as a new rule. See *Teague*, 489 U.S. at 301 ("a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. [Citations.] To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." (Emphasis in original.)); see also *Flowers*, 138 Ill. 2d at 237.

¶ 41    Having reached this conclusion, we must next determine whether the new rule announced in *White* is retroactively applicable to cases, such as the defendant's, on collateral review. As already noted above, retroactive application would be appropriate only if the new rule falls within one of two exceptions articulated under *Teague*, namely that: (1) the new rule places an entire category of primary, private, individual conduct beyond the reach of the criminal-law-making authority to proscribe or (2) the rule is a watershed rule of criminal procedure, implicit in the concept of ordered liberty, and without which the likelihood of an accurate conviction is seriously diminished. See *Teague*, 489 U.S. at 311-13; see also *Flowers*, 138 Ill. 2d at 242; see also *Kizer*, 318 Ill. App. 3d at 246-47 (citing *Sawyer*, 497 U.S. at 241).

¶ 42    Since it is clear that the rule announced in *White* does not legalize an entire category of primary, private individual conduct as required under the first *Teague* exception, we turn to the second exception. Our supreme court has cautioned that this exception must be "narrowly construed," and that its focus is on the accuracy of the conviction and the finding of guilt. *Flowers*, 138 Ill. 2d at 242; see also *People v. Morris*, 236 Ill. 2d 345, 361-62 (2010) (citing *Teague*, 489 U. S. at 313-14).

¶ 43    Moreover, specific to the cause at bar, our supreme court has reiterated:

> "[A] rule that only affects the enhancement of a defendant's sentence does not amount to an error which seriously affects the fairness, integrity or public reputation of judicial proceedings so as to fall within the second *Teague* exception requiring retroactivity in all cases." *Morris*, 236 Ill. 2d at 363 (citing *People v. De La Paz*, 204 Ill. 2d 426, 438 (2003)).

¶ 44    In *Morris*, two defendants who entered negotiated guilty pleas in the circuit court challenged the dismissal of their *pro se* postconviction petitions, each of which asserted that the defendants were not admonished that they would be required to serve a term of mandatory supervised release (MSR) in addition to their sentences, thereby depriving the defendants of the benefit of their negotiated plea agreement. *Morris*, 236 Ill. 2d at 348-49. In support of their argument, the defendants cited to the decision in *People v. Whitfield*, 217 Ill. 2d 177, 203 (2005), which was decided after the defendants' postconviction petitions were dismissed. *Morris*, 236 Ill. 2d at 348-49. *Whitfield* held that failure to admonish a defendant of his MSR obligation during the plea hearing constituted a violation of the defendant's due process rights and required the fulfillment of the promise made during the plea agreement through the modification of the defendant's sentence (*i.e.*, the reduction of the sentence to include the MSR obligation). *Morris*, 236 Ill. 2d at 356-59 (citing *Whitfield*, 217 Ill. 2d at 181-202).

¶ 45    The defendants in *Morris* sought application of *Whitfield* to their causes. *Morris*, 236 Ill. 2d at 359-60. Our supreme court, however, rejected their invitation, finding that *Whitfield* did not apply retroactively to cases, such as the defendants', on collateral review. *Morris*, 236 Ill. 2d at 360. In doing so, our supreme court first held that *Whitfield* was not " 'compelled' " or " 'dictated' " by precedent and, therefore, announced a new rule of law. *Morris*, 236 Ill. 2d at 360-61. The court further held that *Whitfield* did not fall under either of the exceptions set forth in *Teague*. *Morris*, 236 Ill. 2d at 361-62. Specifically, with respect to the second *Teague* exception, the court in *Morris* noted that the *Whitfield* rule "cannot be characterized as a profound and sweeping change to rules of criminal procedure which is essential to the fundamental fairness of criminal proceedings" so as to require retroactive application to cases on collateral review. *Morris*, 236 Ill. 2d at 363. In doing so, the court in *Morris* noted that in its prior decision in *De La Paz*, 204 Ill. 2d at 438, rejecting the retroactive application of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to cases on collateral review, it had made clear that a rule that only affects the enhancement of a defendant's sentence does not fall into the category of errors that affect the integrity of the judicial system so as to trigger the second *Teague* exception. The court in *Morris* noted that it had no reason to deviate from this rationale. *Morris*, 236 Ill. 2d at 363 (citing *De La Paz*, 204 Ill. 2d at 438).

¶ 46    Applying the principles articulated in *Morris* to the present case, we too are compelled to conclude that the decision in *White* did "not amount to an error which seriously affects the fairness, integrity or public reputation of judicial proceedings so as to fall within the second *Teague* exception requiring retroactivity in all cases." *Morris*, 236 Ill. 2d at 363. The new rule announced in *White* merely mandates the application of the firearm enhancement provision of the murder statute (730 ILCS 5/5-8-1(a)(1)(d)(i) (West 2004)) any time the factual basis of a plea agreement includes the use of a firearm. As such the rule only "affects the enhancement of a defendant's sentence" and not the integrity or the reputation of the judicial system. See *Morris*, 236 Ill. 2d at 363; see also *People v. De La Paz*, 204 Ill. 2d at 438 (holding that the decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), does not meet the second *Teague* exception so as to be applied to cases on collateral review, because that decision only affects the enhancement of a defendant's sentence and does not amount to an error that seriously affects the fairness or reputation of court proceedings). Accordingly, for all of the aforementioned reasons, we must conclude that *White* does not apply retroactively to the defendant's case.

¶ 47    Since *White* does not apply to the defendant's postconviction claim, the defendant is without remedy and both his conviction and sentence must stand.

¶ 48                              B. Correction of Mittimus

¶ 49    The parties agree that the defendant's mittimus does not reflect the correct amount of fines and fees that should have been imposed upon the defendant. The trial court in this case imposed a total of $545 in fines and fees against the defendant, including: (1) $190 for a felony complaint filed (see 705 ILCS 105/27.2(a)(w)(1)(A) (West 2004)); (2) $60 for a felony complaint conviction (see 55 ILCS 5/4-2002.1(a) (West 2004)); (3) $200 toward the State DNA identification system (see 730 ILCS 5/5-4-3(j) (West 2004)); (4) $20 for violent crime victim assistance (725 ILCS 240/10(c) (West 2004)); (5) $30 for clerk automation and document storage (see 705 ILCS 105/27.3 (West 2004)); (6) $15 for sheriff court services (see 55 ILCS 5/5-1103 (West 2006)); (7) $5 for court systems (see 55 ILCS 5/5-1101(a) (West 2006)); (8) $10 for the arrestee's medical costs fund (see 730 ILCS 125/17 (West 2004)); (9) $10 for the mental health court (see 55 ILCS 5/5-1101(d-5) (West 2006)); and (10) $5 toward the youth division/peer court (see 55 ILCS 5/5-1101(e) (West 2006)).

¶ 50    The defendant contends and the State concedes that the $10 mental health court and $5 youth division/peer court fees were wrongfully imposed and should be vacated because they were enacted after the date of the underlying offense for which the defendant was convicted. After a review of the record, we agree with the parties. The legislature enacted both the mental health court and youth division/peer court fines on January 1, 2005. See 55 ILCS 5/5-1101(e) (West 2006); Pub. Act 93-982 (eff. Jan. 1, 2005); Pub. Act 93-992 (eff. Jan. 1, 2005). The defendant committed the underlying offense on December 10, 2002, almost three years before the effective date of the fines. Accordingly, these fines cannot be applied to his case. See *People v. Maxwell*, 2011 IL App (4th) 100434, ¶ 105 (holding that where the fine statutes went into effect after the defendant committed the offense, the imposition of the fine was an invalid *ex post facto* punishment that should be vacated).

-12-

¶ 51        Accordingly, we instruct the clerk of the circuit court to correct the mittimus to reflect a total of $530 in fines and fees. See Ill. S. Ct. R. 615(b)(1) ("[o]n appeal the reviewing court may *** modify the judgment or order from which the appeal is taken"); *People v. McCray*, 273 Ill. App. 3d 396, 403 (1995) ("[r]emandment is unnecessary since this court has the authority to directly order the clerk of the circuit court to make the necessary corrections").

¶ 52                                    III. CONCLUSION
¶ 53        For all the foregoing reasons, we affirm the circuit court's dismissal of the defendant's postconviction petition and direct the clerk of the circuit court to correct the mittimus.

¶ 54        Affirmed; mittimus corrected.