# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Dumke v. City of Chicago*, 2013 IL App (1st) 121668

---

| | |
|---|---|
| Appellate Court Caption | MICHAEL DUMKE, Plaintiff-Appellant, v. THE CITY OF CHICAGO, a Municipal Corporation, Defendant-Appellee. |
| District & No. | First District, Third Division<br>Docket No. 1-12-1668 |
| Filed | June 28, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action seeking the disclosure of a consultant's report prepared for defendant city's police department, the trial court erred in holding that only the superintendent of the police department, not the mayor, could waive the disclosure exemption under section 7(1)(f) of the Freedom of Information Act, and the entry of summary judgment for the city was reversed and summary judgment was entered for plaintiff pursuant to Supreme Court Rule 366 on the ground that defendant's mayor waived the exemption from disclosure by publicly citing and identifying the report in a press conference and press release; furthermore, the mayor's citation to the entire report precluded a need for an *in camera* review to determine whether any part of the report should be withheld. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-13550; the Hon. Franklin U. Valderrama, Judge, presiding. |
| Judgment | Reversed. |

| Counsel on Appeal | John S. Elson, of Northwestern University Legal Clinic, of Chicago, for appellant. |
| | |
| | Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and J. Mark Powell, Assistant Corporation Counsel, of counsel), for appellee. |
| | |
| Panel | JUSTICE PIERCE delivered the judgment of the court, with opinion. Presiding Justice Neville and Justice Sterba concurred in the judgment and opinion. |

## OPINION

¶ 1    Plaintiff appeals from an order granting defendant City of Chicago's (the City) motion for summary judgment and denying his cross-motion for summary judgment. Plaintiff argues: (1) the trial court improperly held that where two public bodies possess a requested public record, the head of only one of the public bodies can waive the disclosure exemption under section 7(1)(f) of the Freedom of Information Act (FOIA or the Act) (5 ILCS 140/7(1)(f) (West 2010)); (2) this court should grant summary judgment on plaintiff's claim that Mayor Richard Daley publicly cited and identified the consultant's report, thereby waiving the exemption from disclosure under section 7(1)(f) of FOIA. For the following reasons, we reverse the judgment of the trial court and grant summary judgment in favor of plaintiff.

¶ 2                                     BACKGROUND

¶ 3    On August 4, 2010, plaintiff submitted a FOIA request to the Chicago police department seeking all records "generated by [t]he 2009 study/assessment of Chicago Police Department operations conducted by A.T. Kearney and Civic Consulting Alliance." Plaintiff's request came as a result of a press conference held by then-Mayor Richard Daley, wherein Daley discussed the city's intent to reassign police officers from administrative duties to patrol duty, in the attempt to fight crime on the city's troubled streets. Mayor Daley explained that the reassignments were the result of a management study requested by then-Chicago Police Superintendent Weis and conducted by Civil Consulting Alliance and A.T. Kearney. The police department responded that the request was unduly burdensome and denied the request.

¶ 4    Thereafter, on September 21, 2010, plaintiff narrowed his request to only "[a] copy of the final report of assessment of Chicago Police Department operations conducted by A.T. Kearney and Civic Consulting Alliance" (the report). On September 28, 2010, the police department notified plaintiff and the Illinois Attorney General's Public Access Counselor that it intended to deny his request under section 7(1)(f) of FOIA. 5 ILCS 140/7(1)(f) (West 2010). This decision was later affirmed by the Illinois Attorney General's Public Access Counselor.

¶ 5     On April 11, 2011, plaintiff filed a complaint against the City of Chicago, Mayor Daley and two Chicago police department FOIA officers for declaratory and injunctive relief seeking the release of various records. Counts I and II of plaintiff's complaint sought to enforce FOIA requests unrelated to the report in this case and were settled by agreement. Relevant to this appeal is plaintiff's count III, wherein he alleged that the city violated FOIA by its refusal to produce the report. In addition, plaintiff alleged that his request was not exempt from disclosure under section 7(1)(f) because he sought a public record or portions thereof which were publicly cited and identified by the mayor and/or because the requested report was final with respect to the police department's operational changes that were based on the recommendations of the report.

¶ 6     Both sides moved for summary judgment. Plaintiff argued that Mayor Daley waived the exemption in section 7(1)(f) when he discussed the report at the press conference. In opposition, defendant argued that because plaintiff had directed his FOIA request for the report to the police department, the police department was responsible for providing the report, not the mayor's office. Therefore, because the superintendent of police is the head of the police department he, and not Mayor Daley, was the head of the public body whom FOIA exclusively authorized to waive the section 7(1)(f) exemption from disclosure. The city also argued that even if Mayor Daley were authorized to waive the exemption, he did not do so when he discussed the report at the press conference.

¶ 7     After considering the parties' memoranda in support of their cross-motions for summary judgment, the trial court granted the city's motion for summary judgment as to count III of the plaintiff's complaint and denied plaintiff's cross-motion for summary judgment seeking disclosure of the report. The court ruled that even if Mayor Daley publicly cited the report, he was not empowered to waive the exemption by publicly citing the report because the police superintendent, and not the mayor, was the head of the Chicago police department and FOIA's language allowed only one head of a public body to waive the exemption. Because the court found that Mayor Daley was not the "head of the public body" empowered to waive the exemption for the report, it did not reach the other contested issue on summary judgment of whether the mayor's statements about the report at the press conference were sufficient to be deemed public citation and identification of the report.

¶ 8                                    ANALYSIS

¶ 9     Plaintiff argues that this court should grant summary judgment on his claim because Mayor Daley publicly cited and identified the report, thereby waiving the exemption from disclosure found in section 7(1)(f) of FOIA. The City is foregoing its argument in this court that the superintendent of the police department is the "head of the public body" within the meaning of section 7(1)(f) and only the superintendent, and not the mayor or any other official, could waive the exemption. Despite the fact that plaintiff raises several claims here, the City asserts that the sole issue is whether Mayor Daley waived the exemption in section 7(1)(f) of FOIA. We believe this issue is dispositive.

¶ 10    However, because this issue may arise in the future, we want to address the trial court's finding that because the FOIA request was directed at the police department "only one person

may be the 'head of the public body' and therefore, have the ability to waive the § 7(1)(f) exemption." As later discussed, section 7(1)(f) exempts from disclosure predecisional records unless they are publicly cited and identified by the "head of the public body." 5 ILCS 140/7(1)(f) (West 2010). The Act defines "public body," to include "all legislative, executive, administrative, or advisory bodies of the State, *** counties, townships, cities, *** and all other municipal corporations *** [and] any subsidiary bodies of any of the foregoing." 5 ILCS 140/2(a) (West 2010). " 'Head of the public body' means the president, mayor, chairman, presiding officer, director, superintendent, manager, supervisor or individual otherwise holding primary executive and administrative authority for the public body, or such person's duly authorized designee." 5 ILCS 140/2(e) (West 2010). While we agree with the trial court that the police department is a public body (*Board of Regents of the Regency University System v. Reynard*, 292 Ill. App. 3d 968, 978 (1997) (under FOIA, a subsidiary public body is itself a public body for purposes of complying with the requirements of the statute)), that its superintendent is its chief executive officer[1] and that only one person can be the head of a public body, we disagree with the conclusion that only the police superintendent could waive the applicable exemption for the report. It is undisputed that the City of Chicago is a public body that was in possession of the report and that Richard Daley was mayor and chief executive officer[2] of the City when he referred to the report in the press conference. Even though plaintiff directed his FOIA request at the police department, based on information he received from the city's website instructing him to make this FOIA request to that department, the trial court erred when it found that the superintendent of police was the only public officer that possessed the report and had the duty to disclose it. The trial court gave too narrow an application of the word "superintendent" used in section 2(e). Clearly, in enacting the Act the legislature could not include every title that might exist for the thousands of positions in government subject to the statute and to accommodate this fact it used the term "or such person's duly authorized designee." 5 ILCS 140/2(e) (West 2010). Because the mayor, as the chief executive officer of the City of Chicago is, by definition, the head of the public body at issue and he used, received, and possessed the report, the trial court erred when it found that the mayor could not waive the exemption from disclosure by citing and identifying the report. 5 ILCS 140/2(c) (West 2010) (Documents that are subject to disclosure under FOIA are those "having been or being used by, received by, in the possession of, or under the control of any public body."). Accordingly, we hold that the trial court erred when it granted summary judgment in favor of the City on the ground that the mayor was not the head of the public

---

[1]"The superintendent of police shall be the chief executive officer of the police department. He shall be appointed by the mayor upon recommendation of the police board and with the advice and consent of the city counsel and shall serve at the pleasure of the mayor." Chicago Municipal Code § 2-84-040 (amended June 5, 1987).

[2]"The Mayor of Chicago, the city's chief executive officer, directs city departments and appoints department heads, with the advice and consent of the city council." http://www.cityofchicago.org/city/en/depts.html.

body that was responsible under FOIA for tendering the report.

¶ 11    We now turn to the core of plaintiff's claim. Plaintiff requests summary judgment in his favor finding the report lost its exemption from disclosure based on the statements of the mayor during a press conference dealing with police deployment in response to mounting violence in certain areas of the City. Not surprisingly, the City opposes this request. Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). The parties here filed cross-motions for summary judgment, and agree that no genuine issue of material facts exists because the City has abandoned the position it advanced in the trial court that only the superintendent of police, as head of the police department, could waive the section 7(1)(f) exemption. The parties invite this court to decide the issues presented as questions of law. *Allen v. Meyer*, 14 Ill. 2d 284, 292 (1958). We review the trial court's summary judgment ruling under a *de novo* standard of review. *American Service Insurance Co. v. Jones*, 401 Ill. App. 3d 504, 520 (2010). This court has the authority to grant summary judgment based on the record before us. See Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994) (this court has the power to make any further order or grant any relief that "the case may require"); *Casolari v. Pipkins*, 253 Ill. App. 3d 265, 269 (1983).

¶ 12    The purpose of FOIA is "to open governmental records to the light of public scrutiny." *Bowie v. Evanston Community Consolidated School District No. 65*, 128 Ill. 2d 373, 378 (1989). FOIA may not be used to violate individual privacy rights or disrupt the proper work of a governmental body beyond its responsibilities under the Act. 5 ILCS 140/1 (West 2008). Unless a statutory exemption found in section 7 of FOIA applies, a public body must comply with a valid request for information. *Day v. City of Chicago*, 388 Ill. App. 3d 70, 73 (2009).

¶ 13    The City claims that section 7(1)(f) exempts the requested report from disclosure. Section 7(1)(f) states as follows:

> "(1) *** [T]he following shall be exempt from inspection and copying:
>
> * * *
>
> (f) Preliminary drafts, notes, recommendations, memoranda and other records in which opinions are expressed, or policies or actions are formulated, except that a specific record or relevant portion of a record shall not be exempt when the record is publicly cited and identified by the head of the public body." 5 ILCS140/7(1)(f) (West 2010).

¶ 14    The Act was patterned after the federal Freedom of Information Act (5 U.S.C. § 552 (2000)). *Cooper v. Department of the Lottery*, 266 Ill. App. 3d 1007, 1012 (1994). Section 7(1)(f) of the Act is the equivalent of the "deliberative process" exemption found in section 552(b)(5) of the federal Freedom of Information Act, which exempts from disclosure interagency and intra-agency predecisional and deliberative material. See 5 U.S.C. § 552(b)(5) (2000). The federal deliberative-process exception:

> "typically does not justify the withholding of purely factual material [citation], nor of documents reflecting an agency's final policy decisions [citation], but it does apply to predecisional policy discussions [citation], and to factual matters inextricably intertwined

-5-

with such discussions [citation]. Thus, in order to qualify for the privilege, a document must be both predecisional in the sense that it is 'actually [a]ntecedent to the adoption of an agency policy,' and deliberative in the sense that it is 'actually *** related to the process by which policies are formulated.' " *Enviro Tech International, Inc. v. United States Environmental Protection Agency*, 371 F.3d 370, 374-75 (7th Cir. 2004).

¶ 15     In short, the deliberative-process privilege exemption of the federal statute is intended to protect the communications process and encourage frank and open discussion among agency employees before a final decision is made. *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975). Our supreme court has found that section 7(1)(f) mirrors the purpose of the federal deliberative-process exception and has explained, "[t]he existence of an FOIA exemption for predecisional materials is evidence of a public policy favoring the confidentiality of such communications." *People ex rel. Birkett v. City of Chicago*, 184 Ill. 2d 521, 528-29 (1998) (refused to recognize such deliberative-process privilege, but only after recognizing that the exemption under FOIA did exist). However, there is a definite distinction between the deliberative-process privilege exemption of the federal statute and our section 7(1)(f). The deliberative-process privilege exemption of the federal statute requires disclosure of predecisional material once it has been adopted or incorporated by an agency. *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. at 161. Illinois has no such limitation dealing with whether the communication was incorporated in the final decision. Thus, if the communication, record or portion thereof is "publicly cited and identified," it loses its exemption regardless of whether the communication was adopted or incorporated by an agency.

¶ 16     Putting aside whether the exemption has been waived by Mayor Daley's statements during his press conference, the parties agree that the report is exempt under section 7(1)(f) and would not be subject to release. The parties do not agree on whether Mayor Daley's comments at the press conference waived the exemption. "Any public body that asserts that a record is exempt from disclosure has the burden of proving that it is exempt by clear and convincing evidence." 5 ILCS 140/11(f) (West 2010). "Where, as here, the requesting party challenges the public body's denial of a FOIA request, the public body must demonstrate that the records requested fall within the claimed exception." *Stern v. Wheaton-Warrenville Community Unit School District 200*, 233 Ill. 2d 396, 406 (2009).

¶ 17     Here, plaintiff claims that Mayor Daley waived the exemption found in section 7(1)(f) of FOIA because he publicly cited and identified the report. The City argues that even though Mayor Daley referenced the report in his press release, this was not public citation and identification of the report for purposes of waiving the exemption under section 7(1)(f). Rather, the City argues that the mayor only made general and vague references to the report that do not fall within the scope of the term "publicly cite and identify." The parties disagree on what conduct constitutes public citation and identification.

¶ 18     Section 7(1)(f) does not provide any guidance on how much or how little needs to be said or done to constitute an effective waiver. The parties have not advanced or presented any legislative history or citation to any legal authority, nor has our research found any, that assists us in determining what minimum conduct amounts to public citation and identification. However, the parties provide different definitions and interpretation of the

terms, thereby questioning the clarity of section 7(1)(f).

¶ 19    When we interpret a statute, the primary goal is to ascertain and give effect to the intent of the legislature. *Illinois Department of Healthcare & Family Services v. Warner*, 227 Ill. 2d 223, 229 (2008).

"The process of statutory interpretation is firmly established. The goal is to ascertain and give effect to the intent of the legislature. The simplest and surest means of effectuating this goal is to read the statutory language itself and give the words their plain and ordinary meaning. [Citation.] However, it is not sufficient to read a portion of the statute in isolation. We must, instead, read the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it. [Citation.] Where the language of the statute is clear and unambiguous, we must apply it as written, without resort to other tools of statutory construction. [Citation.] Generally, the language of a statute is considered ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses." *MD Electrical Contractors, Inc. v. Abrams*, 228 Ill. 2d 281, 287-88 (2008).

¶ 20    We find no ambiguity in section 7(f)(1). Both "cite" and "identify" have a plain and ordinary meaning, as well as a common understanding. "Cite" is defined as, "[t]o mention or bring forward as support, illustration, or proof." American Heritage Dictionary of the English Language (4th ed. 2009). "Identify" means to "1 a**:** to cause to be or become identical b: to conceive as united (as in spirit, outlook, or principle) <groups that are *identified* with conservation> 2 a**:** to establish the identity of b**:** to determine the taxonomic position of (a biological specimen) establish the identity of: show or prove the sameness of." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/identify (last visited June 11, 2013).

¶ 21    Using these definitions are our guide, we must determine whether Mayor Daley's references to the report can be construed as public citation to and identification of the report so that it is no longer exempt under section 7(1)(f). During the June 2, 2010, press conference, the mayor stated,

"It's an everyday fight. But as a city, we're committed to combat the gang and drug thugs who terrorize our communities, use guns to intimidate and murder unfortunately our citizens. The Chicago Police Department continues to revise its strategies across the city to assure they are–they are best targeting their resources, especially in those neighborhoods most at risk of gun and gang violence. That's why we've worked to pull out as many officers as possible from behind desks onto street duty.

Today I want to announce that by mid July, 130 more police officers will be on streets keeping our city safe. 44 of these officers will be reassigned from administrative duties in the department to help fight crime on some of the most troubled streets. These assignments–reassignments are the result of a management study requested by Superintendent Weis earlier this year. The report offers many findings and ways that the department will improve its management. That is the key.

The 44 officers being announced today for reassignment include 33 from administrative positions. 11 detectives from the department's–police department's arson

-7-

unit who will go back to work on the criminal investigations in the area level.

In addition, within the last year, we have brought in the class of 86 police recruits who are graduating from the police academy on July 14 beginning patrolling on streets and transit system [*sic*]. Federal economic stimulus funds will pay for these officers for 3 years. Last July, as a result of a separate review of staffing at the district level, we reassigned 168 officers from throughout the department to patrolling our streets.

The bottom line is that we have an additional 298 more police officers street duty [*sic*] since the last July than were planned. These aren't huge numbers, but every ma–officer matters.

\* \* \*

The latest officers we–are assigned to some of the most troubled neighborhoods in our city and beats, a step that reinforced our commitment to do all we can to our [*sic*] protect our people. These steps are forward-looking ideas that will produce–both protect taxpayers because we're better using existing resources, as well as better protect our neighborhoods. It's the kind of thinking we must employ during these very tough financial times. When city revenues remain slow, doing more for less is more important than ever.

The study of police administration staffing began in 2010 and was carried out with the pro bono assistance of the Civic Consulting Alliance, Ryan Faye. She's done a tremendous job. The consultant firm is McKinsey and Company. A.T. Kearney also helped various parts of the review. And I want to personally thank them. I want to thank them for their hard work and their commitment to making Chicago a safer community. It cost the city no money. They all volunteered.

As I said many times before, ending violence must be Chicago's crusade. Each of us must do our part, parents, community, and our schools. The police cannot do it alone. In the meantime, we must remain creative and deliver on our commitment to better manage government and do more with less and keep our city as safe and secure as it can be. The steps I've announced today do exactly that. Thank you."

The video of the press conference was placed on Mayor Daley's YouTube page. http://www.youtube.com/watch.

¶ 22    In addition, a summary of the press conference was prepared and published in a written press release dated June 2, 2010. The written press release gave an abridged version of the city's plan to reassign police officers to better combat street violence. Among other things, the press release stated that, "Mayor Richard M. Daley said today that by mid-July 130 more Chicago police officers will be assigned to street duty as a result of a management review of the Chicago Police Department Administrative operations, more efficient use of resources and a newly-graduated class from the Chicago Police Academy." The press release also stated, "[t]he study of administrative staffing began early in 2010 and was carried out with the pro-bono assistance of the Civic Consulting Alliance. The consulting firms of McKinsey and Company and A.T. Kearney also helped with various parts of the review."

¶ 23    Statutory construction does not allow for expansive interpretations not contemplated by the legislature. In crafting section 7(1)(f), the legislature gave no guidance as to how much

or how little citation was sufficient to waive the predecisional exemption. When we liberally construe section 7(1)(f) as written, we find the mayor's repeated references to the report in the press conference satisfy both the definition of "cite" and "identify." In doing so, we note that all doubts are resolved in favor of disclosure. *Southern Illinoisian v. Illinois Department of Public Health*, 218 Ill. 2d 390, 416-17 (2006).

¶ 24    The mayor cited and identified the report as a "management study requested by Superintendent Weis earlier this year" and its purpose as "the study of police administration staffing." He cited the report and he identified it as support for his reorganization plan. Specifically, he stated that Superintendent Weis requested the management study, and as a result of the study, 130 more police officers would be on the streets keeping the city safe. Of those 130 more officers, 44 would be reassigned from administrative duties and 86 police recruits would be graduating from the police academy. The mayor identified the individuals and businesses that conducted the study and issued the resulting report. He stated that "the study of police administration staffing" began in 2010 and was conducted *pro bono* by the Civic Consulting Alliance with the assistance of Ryan Faye. Mayor Daley also stated that A.T. Kearney helped with various parts of the review. Mayor Daley not only identified the study and the key players, but personally thanked them. The mayor also indicated that the report "offers many findings and ways that the department will improve its management." There is no question that the mayor cited and identified the report in public given that it occurred during a press conference that was later available on the mayor's YouTube page, a summary of which was released in printed form. In finding that the report was identified within the meaning of FOIA, we note that when plaintiff made his request for the report, the City knew exactly which report plaintiff was requesting and, further, in its answer to plaintiff's complaint it described the report as "a final report on the assessment of the Chicago Police Department operations conducted by A.T. Kearney, Civic Consulting Alliance, and McKinsey and Company is a public record." Clearly, any notion the report was not identified within the meaning of FOIA cannot be seriously entertained.

¶ 25    The City's reliance on *Harwood v. McDonough*, 344 Ill. App. 3d 242 (2003), is misplaced. In *Harwood*, the plaintiff made a request under FOIA with the Illinois Department of Commerce and Community Affairs (DCCA) for a copy of a report prepared by a consulting firm concerning the relocation of the Boeing Company's headquarters to Illinois and copies of all invoices concerning the cost to the state for the report. After plaintiff received no response to his request, he sent an appeal letter. In response, the defendants produced a copy of a one-page executive summary of the report, claiming that the rest of the report was exempt from disclosure under sections 7(1)(f) and (g) of the Act and that the DCCA had not yet received an invoice from the consulting firm. *Id*. at 244.

¶ 26    The plaintiff brought an action in the circuit court seeking an injunction against the defendants prohibiting them from withholding the requested public records and seeking an order for the production of the records. *Id*. The defendants answered by again claiming that the report was exempt from disclosure under sections 7(1)(f) and (g) of the Act. Following cross-motions for summary judgment, the circuit court denied the plaintiff's motion for summary judgment and granted the defendants' motion for summary judgment. *Id*. at 244-45.

¶ 27    Among his arguments on appeal, the plaintiff asserted that section 7(1)(f) was

inapplicable to the report because it was "publicly cited and identified" by the director of the DCCA and then-Governor George Ryan. *Id*. at 248. The plaintiff pointed to comments made by Governor Ryan in a radio address and by the director of DCCA at public hearings, plus materials prepared for those hearings. This court rejected the plaintiff's argument and found that the plaintiff's request for the report was exempt under section 7(1)(f) of FOIA. *Id*. We reasoned that the director's and Governor Ryan's statements did not cite the study itself, but cited information contained only in the executive summary, a document that was specifically prepared for public release and was provided to the plaintiff. In addition, charts that were prepared as part of the director's presentation recapitulated all of the information contained in the executive summary and did not cite the full study. *Id*. at 249.

¶ 28    Unlike *Harwood*, there was no separate document created for public release in this case. Mayor Daley publicly cited and identified the consultants' study and resulting report in the press conference and press release. He mentioned and brought forward the report as support for his reorganization plan. Not only did Mayor Daley cite and identify the report, he acknowledged and commended its authors. A video of that press conference was put on the mayor's YouTube site. The legislature has not established a minimum threshold as to what conduct satisfies citation or identification for purposes of section 7(1)(f). Absent any authority to the contrary and in furtherance of the public policy to open governmental records to the light of public scrutiny, we find the public statements made in this case satisfy the "publicly cite and identify" threshold necessary to constitute a waiver of the section 7(1)(f) exemption. Accordingly, we find that the mayor publicly cited and identified the report in the press conference and in the press release, and we hold that he waived the exemption under section 7(1)(f) of FOIA.

¶ 29    Lastly, the City argues that should this court find that the section 7(1)(f) exemption has been waived, we should remand with instructions to conduct an *in camera* inspection of the requested report to resolve what portions, if any, must be released. Indeed, FOIA provides that the circuit court shall review the request for documents *de novo* and "shall conduct such *in camera* examination of the requested records as it finds appropriate to determine if such records or any part thereof may be withheld under any provision of this Act." 5 ILCS 140/11(f) (West 2010); *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 418 (2006).

¶ 30    However, *in camera* review is not appropriate in this case because Mayor Daley cited the entire report as the basis for the city's decision to reassign police officers. In short, consistent with the public policy underlying FOIA we find that the scope of disclosure should align with the scope of public citation so that the entire report is subject to production.

¶ 31    Furthermore, the City is estopped from raising this argument on appeal. In the trial court the City argued against an *in camera* inspection stating that the report could not be produced in part as, "the facts contained in the report are so inextricably intertwined with opinions, recommendations and conclusions that they simply cannot be segregated." The doctrine of judicial estoppel prohibits a party from assuming a position in a legal proceeding that is contrary to a position it held in a prior legal proceeding. *Bidani v. Lewis*, 285 Ill. App. 3d 545, 550 (1996). We deny the City's request to remand to the trial court for an *in camera* inspection of the report.

¶ 32                              CONCLUSION

¶ 33       Based on the foregoing, we reverse the trial court's ruling granting summary judgment in favor of defendant on count III and, pursuant to our authority under Supreme Court Rule 366(a)(5), grant summary judgment on count III in favor of plaintiff. Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994).

¶ 34       Reversed.