# Illinois Official Reports

## Appellate Court

*People v. Young*, 2013 IL App (1st) 111733

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD YOUNG, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-11-1733 |
| Filed<br>Rehearing denied | December 6, 2013<br>January 23, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings on defendant's postconviction petition in which he alleged for the first time on appeal that his sentences were void due to the trial court's failure to include the mandatory statutory firearm enhancement and that he was entitled to withdraw his negotiated pleas and plead anew or have a trial, the denial of the petition was upheld, since defendant had the benefit of a more lenient sentence for almost a decade before seeking rescission of his plea agreement, and that unreasonable delay barred him from now seeking such relief. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 00-CR-15730; the Hon. Garritt E. Howard, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Jessica A. Hunter, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Amy M. Watroba, and Sheilah O'Grady-Krajniak, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion. <br> Presiding Justice Gordon and Justice Palmer concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant Richard Young appeals from an order of the circuit court of Cook County denying his petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq*. (West 2010)) after an evidentiary hearing. On appeal, defendant has abandoned the allegations in his petition and contends, for the first time, that the sentences he received as a result of his negotiated guilty pleas were void because they did not include the mandatory statutory firearm enhancement compelled by the indictments and factual basis for the offenses. He, therefore, requests that his cause be remanded to the circuit court where he can withdraw his guilty pleas and plead anew, or proceed to trial on the charges.

¶ 2    On January 5, 2004, defendant entered negotiated pleas of guilty to first degree murder and attempted murder and was sentenced to consecutive terms of 25 and 10 years' imprisonment, respectively. The trial court admonished defendant as to the charges for which he was entering a guilty plea and the sentence guidelines. Specifically, the court told defendant that the sentencing range for first degree murder was 20 to 60 years with 3 years of mandatory supervised release, and the sentencing range for attempted first degree murder was 6 to 30 years with 3 years of mandatory supervised release. The court also stated that the sentences would be served consecutively. The court also advised defendant that by pleading guilty, defendant was giving up his right to a trial in front of either a judge or a jury and specifically asked defendant if he understood what a jury trial was. The court asked defendant if he wished to have a trial or plead guilty, and defendant responded that he wished to plead guilty. Defendant confirmed that his signature was on the jury waiver form. The court also inquired of defendant if anyone had said or done anything to force defendant to plead guilty. Defendant

said that he understood his jury waiver and denied that anyone had forced him to plead guilty. The State offered the following factual basis for the plea.

¶ 3 Pam Waters would testify that on June 6, 2000, she was in the area of 1206 Pitner in Evanston, Illinois, with a number of other individuals, including Richard Tinch. She was seated in a car with the door open. A dark blue Oldsmobile with a driver and passenger slowly drove by and then stopped. The passenger then fired multiple gunshots out of the window and gang slogans were yelled. Waters suffered a gunshot to her leg and Tinch died as a result of a gunshot wound.

¶ 4 An investigator would testify that defendant was arrested in connection with the shooting and on June 8, 2000, he gave a court-reported statement. In the statement, he admitted that he was the passenger in the Oldsmobile and codefendant Kevin Jones was the driver. Defendant was in possession of a loaded gun and his intention was to shoot a rival. Defendant and Jones went to an area where they believed they could find the rival. Jones drove into the alley at 1206 Pitner and stopped the car. Defendant then fired a number of shots out of the car window and into a crowd of people. Defendant told the investigator that he later learned that he had shot and killed Tinch.

¶ 5 The trial court then entered the finding of guilty for the first degree murder of Tinch and the attempted murder of Waters.

¶ 6 Defendant filed a *pro se* motion to withdraw his pleas, alleging that they were the result of coercion and ineffective assistance of trial counsel. Defendant was appointed other counsel on his motion, who filed a supplemental motion alleging that defendant was coerced into pleading guilty and had a valid alibi defense that trial counsel failed to investigate. On March 1, 2005, defense counsel filed an amended motion to withdraw the guilty pleas in which he realleged the allegation of coercion.

¶ 7 At the hearing on the motion to withdraw his guilty pleas, defendant and three public defenders, including the attorney who represented him at the guilty plea proceedings, testified. Following that hearing, the court denied defendant's motion to withdraw finding that defendant's responses to the court's inquiries regarding the voluntariness of his pleas contradicted his claims.

¶ 8 On appeal, defendant argued that he should be allowed to withdraw his guilty pleas because trial counsel was ineffective for failing to investigate his alibi defense, that there was other exculpatory evidence, that he was innocent, and that he was coerced into pleading guilty by trial counsels' strong-arm tactics. This court affirmed, finding, in particular, that defendant was not coerced into pleading guilty. *People v. Young*, No. 1-05-0620 (2006) (unpublished order under Supreme Court Rule 23).

¶ 9 On January 5, 2007, defendant, through private counsel, filed a postconviction petition alleging ineffective assistance of trial counsel for failing to properly investigate and present his alibi defense. Counsel also filed an amended postconviction petition, alleging that defendant was coerced into pleading guilty, that there was no probable cause for his arrest, and that he received ineffective assistance of trial counsel.

¶ 10    In support of the petition, defendant attached the affidavit of Earl Arthurs, who averred that defendant was with him on June 6, 2000, "all day long; from early morning to late in the evening." Defendant also attached his own affidavit in which he attested that he was coerced into pleading guilty. He averred that he told his attorney about his alibi defense and that his attorney claimed that she contacted Arthurs and that he would not cooperate in his defense. Defendant averred that Arthurs never told him that his attorney contacted him or asked him to be a witness at his trial. Defendant further averred that his attorney told him that she could not defend him because she could not come up with a defense for him and that she, along with another attorney and their supervisor, ganged up on him to try to convince him to plead guilty, telling him that the only chance he had at seeing the world again was if he pleaded guilty.

¶ 11    Defendant also attached the affidavit of Assistant Public Defender Frederick Weil, who averred that, based on his investigation and the accompanying affidavits, he concluded that defendant did not want to plead guilty to the charged offenses, that he had a valid alibi defense that he wished to present at trial, and that his appointed counsel failed to properly investigate the alibi defense. Weil further averred that defendant's guilty plea was not voluntarily and willingly made, and defendant felt coerced into pleading guilty by his attorneys, who told him that they could not defend him at trial.

¶ 12    On April 23, 2007, the State filed a motion to dismiss defendant's petition. The circuit court denied the motion, and advanced the petition to the third stage for an evidentiary hearing. That hearing was held on May 11, 2011, where Mary Hayashi, who represented defendant at the guilty plea proceedings, testified that she recommended that defendant plead guilty, but she did not tell him that he had to do so. Hayashi also testified that she litigated several pretrial motions on defendant's behalf, including motions to quash and suppress, but they were unsuccessful. Hayashi stated that, as a result, the evidence against defendant was overwhelming, including defendant's confession and the gun used. She also investigated Arthurs, who was a fellow gang member of defendant, and found that he changed the time defendant was with him twice, telling her that defendant was with him around 5 or 6 p.m. and then said it was 7 p.m., but the shooting occurred at 10 p.m. Hayashi further testified that defendant was not amenable to her suggested defense that someone else committed the murder, because the person they were going to accuse was a high-ranking member of his gang. Hayashi told defendant that it was in his best interest to plead guilty in light of the overwhelming evidence against him and the fact that his alibi defense was not viable.

¶ 13    The court found Hayashi to be a highly credible witness whose testimony refuted defendant's allegations and the allegations in the affidavits. The court found that Hayashi provided highly competent representation and that defendant was not coerced into pleading guilty. The court subsequently denied defendant's petition. This appeal follows.

¶ 14    On appeal, defendant contends solely, and for the first time, that the sentences he received as a result of his negotiated guilty pleas were void because they did not include the mandatory statutory firearm enhancement. In support of his contention, defendant cites *People v. White*, 2011 IL 109616, and requests that his cause be remanded to allow him to withdraw his guilty pleas and plead anew or to proceed to trial on the charges.

¶ 15       Although any claim of violation of constitutional rights not raised in an original or amended petition is waived (725 ILCS 5/122-3 (West 2010)), an attack on a void judgment may be made at any time (*People v. Thompson*, 209 Ill. 2d 19, 25 (2004)). Whether a sentence is void is a question of law subject to *de novo* review. *People v. Donelson*, 2011 IL App (1st) 092594, ¶ 7.

¶ 16       Under section 5-8-1 of the Unified Code of Corrections (Code) (730 ILCS 5/5-8-1(a)(1)(a) (West 2000) (now 730 ILCS 5/5-4.5-20 (West 2010))), the sentencing range for first degree murder is 20 to 60 years' imprisonment. However, subsection (d)(iii) of the same statute requires that an enhanced sentence of 25 years or up to a term of natural life be added to the sentence imposed by the court if, during the commission of the offense, defendant personally discharged a firearm that proximately caused the death of another. 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2000). Attempted murder is a Class X felony (720 ILCS 5/8-4(c)(1) (West 2000)), which provides for a sentencing range of 6 to 30 years' imprisonment (730 ILCS 5/5-8-1(a)(3) (West 2000) (now 730 ILCS 5/5-4.5-25 (West 2010))), and requires that 20 years be added to the sentence if defendant personally discharged a firearm or an addition of 25 years up to natural life if great bodily harm resulted from the discharge (720 ILCS 5/8-4(c)(1)(C), (D) (West 2000)).

¶ 17       Here, the basic sentences imposed on defendant's plea convictions fell within the prescribed statutory parameters but failed to include the sentencing enhancement. Defendant thus maintains that the sentences are void under *White*, because the factual basis for the pleas, *i.e.*, that he personally discharged a firearm fatally wounding Tinch and causing great bodily harm to Waters, required the imposition of the firearm enhancement.

¶ 18       In *White*, defendant pleaded guilty to first degree murder in exchange for a sentence of 28 years' imprisonment, and the factual basis for the plea established that a firearm was used in the commission of the murder. *White*, 2011 IL 109616, ¶¶ 4-6. Within 30 days of entering his guilty plea, the defendant filed a motion to withdraw his plea and included the claim that he was subject to the 15-year firearm sentencing enhancement. *Id.* ¶ 9. The supreme court found that the then 15-year mandatory sentencing enhancement for committing murder while armed with a firearm applied despite the trial court's belief that it did not. *Id.* ¶ 19. The supreme court emphasized that a court cannot impose a sentence inconsistent with governing statutes even where the parties and the trial court agree to that sentence. *Id.* ¶ 23. The supreme court reasoned that, by enacting the firearm enhancement provision, the legislature took away any discretion the State and the trial court had to fashion a sentence that does not include this mandatory firearm enhancement. *Id.* ¶ 26. The supreme court thus held that defendant's 28-year sentence, which was less than the minimum with the firearm enhancement, did not conform to the statutory requirements and was void. *Id.* ¶ 31.

¶ 19       Here, as in *White*, defendant pleaded guilty to murder and attempted murder in exchange for sentences that were not authorized by statute. The firearm enhancement provision required that an additional 25 years be added to his sentence for murder and 20 or 25 years to the attempted murder sentence. It is thus apparent that defendant's sentences of 25 and 10 years' imprisonment were less than required by the statute.

¶ 20     However, our inquiry does not end here. In *People v. Avery*, 2012 IL App (1st) 110298, ¶ 39, *appeal denied*, No. 114840 (Ill. Nov. 28, 2012) this court found that when the supreme court decided *White*, it announced a new rule of law prior to which there was confusion as to whether the State could negotiate pleas that did not include the firearm enhancement for first degree murder, even where the use of a firearm is noted in the factual basis for the pleas. As such, we found that *White* did not apply retroactively to defendant's case on collateral review since his conviction was finalized before the *White* decision. *Id.* ¶ 46.

¶ 21     In reaching that conclusion, this court conducted the three-step analysis set forth in *Teague v. Lane*, 489 U.S. 288 (1989). This requires the reviewing court to determine the date upon which defendant's conviction became final, whether the constitutional rule sought by defendant existed when the conviction became final, and if the rule is new, whether it falls within one of the two exceptions to the *Teague* doctrine, *i.e.*, it places an entire category of primary conduct beyond the reach of criminal law or requires the observance of those procedures that are implicit in the concept of ordered liberty. *Avery*, 2012 IL App (1st) 110298, ¶¶ 31-34. Applying that analysis, this court noted that defendant's conviction had been finalized before the supreme court decided *White* and that *White* announced a new rule of law because prior to that decision, there was a lack of clarity as to whether the State could negotiate pleas that did not include the firearm enhancement for first degree murder. *Id.* ¶¶ 36, 39-40.

          "In that respect, we note that prior to the decision in *White*, there was confusion as to whether the State could, in its discretion, negotiate pleas that did not include the firearm enhancement for first degree murder, even where the factual basis for the plea included the use of a firearm in the commission of the offense, since it was within the State's discretion to determine what charges to pursue." *Id.* ¶ 39.

¶ 22     The *Avery* court noted that this "lack of clarity" was evident in the defendant's direct appeal in which he raised the same argument that his sentence was void. On direct appeal, we held that his sentence was not void and that it was the understanding of the parties as part of the negotiated plea not to include the firearm enhancement. *Id.*

¶ 23     This court then found that *White* did not legalize an entire category of primary, private individual conduct as required under the first *Teague* exception, and further, that the rule in *White* only affects the enhancement of a defendant's sentence and not the integrity or reputation of the judicial system. *Id.* ¶¶ 42, 46. " '[A] rule that only affects the enhancement of a defendant's sentence does not amount to an error which seriously affects the fairness, integrity or public reputation of judicial proceedings so as to fall within the second *Teague* exception requiring retroactivity in all cases.' " *Id.* ¶ 43 (quoting *People v. Morris*, 236 Ill. 2d 345, 363 (2010)).

¶ 24     Accordingly, we concluded that *White* did not apply retroactively to the defendant's case. *Id.* ¶ 46. We find the reasoning in *Avery* sound and likewise hold that *White* does not apply retroactively to this case.

¶ 25     In reaching this conclusion, we have examined *People v. Cortez*, 2012 IL App (1st) 102184, cited by defendant and find his reliance to be misplaced. In *Cortez*, defendant argued, for the first time on appeal, that his negotiated plea was based on an unlawful promise to grant

double custody credit, and, therefore, was void. *Id.* ¶¶ 7, 17. This court agreed and remanded his cause for further proceedings. *Id.* ¶ 23.

¶ 26       In so concluding, we observed that *White*'s central holding was that a sentence not authorized by statute is void, and found, contrary to the State's argument, that *White* did not create a new rule by eliminating the State's discretion in seeking to include the firearm enhancement. *Id.* ¶ 16. In a footnote, however, we clarified that our opinion in *Cortez* was not contrary to *Avery* in that it did not concern the first degree murder firearm enhancement, and relied on *White* only for the well-established general principles concerning void sentences and void plea agreements. *Id.* ¶ 16 n.1.

¶ 27       In his reply brief, defendant takes issue with this "narrow" interpretation, and asserts, relying on the dissent in *Cortez*, that *Avery* cannot be so easily dismissed based on addressing a different charge than the one at issue, explaining that the holding in *White* does not "morph depending on the context." He maintains that reviewing courts have long held that when parties enter into a plea agreement that results in a void sentence, the sentence must be vacated and the plea must be withdrawn, and that *White* affirmed these long-standing principles, and as such, did not announce a new rule.

¶ 28       *Cortez*, on the other hand, did not involve the issue presented here and addressed in *Avery*, namely, whether the parties can negotiate around the statutory firearm enhancement requirements during plea proceedings. *Cortez* is thus factually inapposite as it dealt with the issue of whether a plea bargain based on an unlawful promise to grant double custody credit was void. *Id.* ¶ 19.

¶ 29       As in *Avery*, we are compelled to conclude that *White* did announce a new rule. Prior to the decision in *White*, there was confusion as to whether the State could, in its discretion, negotiate pleas without the firearm enhancement for first degree murder, even where the factual basis for the plea included the use of a firearm in the commission of the offense. *Avery*, 2012 IL App (1st) 110298, ¶ 39.

¶ 30       Here, we note that the offenses for which defendant entered a plea of guilty took place on June 6, 2000, approximately six months after the firearm enhancement provision took effect. See Pub. Act 91-404 (eff. Jan. 1, 2000) (adding 720 ILCS 5/8-4(c)(1)(B), (C), (D), and 730 ILCS 5/5-8-1(a)(1)(d)). However, the plea hearing took place four years after the enactment became effective. The defendant and the prosecutor reached an agreement without the mandatory enhancement for both the first degree murder and attempted murder counts. At the plea proceeding, the factual basis included a statement that defendant fired a gun into a crowd of people. In light of this, the attorneys and the trial judge agreed that the sentences were appropriate in this case. The record thus shows that there was confusion four years after the enactment as to the mandatory nature of the firearm enhancement when the parties had engaged in plea bargaining.

¶ 31       We acknowledge that other districts have disagreed with *Avery*. In *People v. Smith*, 2013 IL App (3d) 110738, *appeal allowed*, No. 116572 (Ill. Nov. 27, 2013), the Third District disagreed with *Avery* and concluded that *White* did not create a new rule of law. There, the defendant pled guilty to first degree murder in exchange for a sentence of 30 years. At the plea hearing, the trial court advised the defendant that the State was withdrawing its notice of intent

to seek a firearm enhancement of 25 years. *Id.* ¶ 3. The reviewing court held that the defendant's sentence was void for failing to comply with the mandatory sentencing enhancement and remanded to the trial court to allow the defendant to withdraw his guilty plea. *Id.* ¶ 14.

¶ 32     However, the *Smith* authoring justice observed that while "the law compels this result," he was "less than satisfied with the result." *Id.* ¶ 15.

> "Therefore, because the State failed to amend the indictment and rephrase the factual basis of the plea to conform to what clearly was the agreement of the parties, this sentence is void; because it is void, this sentence can be attacked at any time. This scenario raises the spectre of some real mischief that might be lurking in the bushes. We have no idea how many other such void sentences based upon knowing agreements between the State and defendants are out there. It seems reasonable to assume that there are a number of them. A defendant incarcerated under such an agreement can wait until he knows that a key witness or witnesses have disappeared and then raise this argument in a postconviction petition, knowing that the State's chances of convicting him of the offense to which he pled guilty are greatly reduced, if not totally obviated. This does not seem like a happy circumstance." *Id.*

¶ 33     Although the reviewing court in *Smith* did not agree with the conclusion reached in *Avery*, we observe that *Smith* supports the conclusion that *White* announced a new rule because more than 10 years after the enactment of the mandatory firearm enhancement, trial courts, prosecutors, and defense attorneys believed that plea agreements could be entered into in which the enhancement was not included as part of the sentence. That confusion existed within multiple appellate districts in the state, as shown in the instant case and in *Smith* until *White* was decided.

¶ 34     In *People v. Hubbard*, 2012 IL App (2d) 120060, ¶ 17 n.1, the Second District stated in *dicta* in a footnote that it would "suggest" that the holding in *White* follows from *Arna* and that the holding in *White* is retroactive, but that it did not need to decide the matter because it did not apply *White* in granting relief. There, the defendant pled guilty to aggravated criminal sexual assault after having previously been convicted of predatory criminal sexual assault. Defendant was then eligible for natural life imprisonment under the recidivist provision in section 12-14(d)(2) of the Criminal Code of 1961 (720 ILCS 5/12-14(d)(2) (West 2004)), but received a sentence of 47.5 years on his guilty plea. *Hubbard*, 2012 IL App (2d) 120060, ¶ 1. In a petition filed pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)), defendant contended that his sentence was void because section 12-14(d)(2) required a sentence of natural life. *Hubbard*, 2012 IL App (2d) 120060, ¶¶ 9-13. In affirming the defendant's 47.5-year sentence, the reviewing court distinguished this case from *White*, wherein the State did not present the defendant's prior conviction at the formal plea hearing as an aggravating factor. *Id.* ¶ 22. The *Hubbard* court reasoned that this decision by the State was a valid element of effective plea bargaining. *Id.* ¶ 24.

¶ 35     We find the instant appeal indistinguishable from *Avery*, and thus conclude that the ruling in *White* does not apply retroactively to this case on collateral review and that defendant's convictions and sentences must stand.

¶ 36     Further, even if *White* was not a new rule of law, defendant's argument would not succeed because he is estopped from raising a belated challenge to his plea agreement when the error was to his benefit. "[A] reviewing court 'can sustain the decision of a lower court for any appropriate reason, regardless of whether the lower court relied on those grounds and regardless of whether the lower court's reasoning was correct.' " *People v. Johnson*, 208 Ill. 2d 118, 129 (2003) (quoting *People v. Novak*, 163 Ill. 2d 93, 101 (1994)).

¶ 37     In Illinois, plea agreements are encouraged and are considered "vital to and highly desirable for our criminal justice system." *People v. Evans*, 174 Ill. 2d 320, 325 (1996). "Although plea agreements exist in the criminal justice structure, they are governed to some extent by contract law principles." *Evans*, 174 Ill. 2d at 326. "Absent due process concerns, the validity of a plea agreement is generally governed by contract law." *People v. Bannister*, 236 Ill. 2d 1, 9 (2009). " '[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' " *People v. Hughes*, 2012 IL 112817, ¶ 68 (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)). "The principal inquiry, in that respect, is whether the defendant has received the benefit of his bargain." *People v. Donelson*, 2013 IL 113603, ¶ 19 (citing *Hughes*, 2012 IL 112817, ¶ 69).

¶ 38     In *Donelson*, the supreme court considered a situation in which a defendant received a lesser concurrent sentence rather than a required consecutive sentence under the relevant sentencing statute. The *Donelson* court observed that both the State and the defendant were mistaken in their belief that the defendant's sentences could be imposed to run concurrently. "However, pursuant to contract principles, contracting parties' mutual mistake may be rectified by recourse to contract reformation (*Czarobski v. Lata*, 227 Ill. 2d 364, 371-72 (2008)), where they are in actual agreement and their true intent may be discerned (*Wheeler-Dealer, Ltd. v. Christ*, 379 Ill. App. 3d 864, 869 (2008))." *Donelson*, 2013 IL 113603, ¶ 20. The supreme court detailed the procedural history of defendant's case and found his claim that he negotiated for specific sentences to "ring[ ] hollow." The court concluded that the defendant's plea could be fulfilled and remanded to the trial court for resentencing in accordance with the plea agreement and applicable statutes. *Donelson*, 2013 IL 113603, ¶¶ 28-29.

¶ 39     Here, defendant voluntarily pled guilty for the agreed-upon sentence of 35 years, but now, nearly a decade after his plea was entered, he asserts that his sentence was improper because he should have received a sentence with the firearm enhancement, which would have subjected him to a minimum sentence of 76 years, with the 25-year enhancement on both convictions. Defendant has received the benefit of his plea agreement, a significantly lower sentence. The State benefitted from the plea agreement by being spared the time and expense of trial. Defendant is now assuming a position contrary to his agreement in his guilty plea in order to receive a benefit by withdrawing his guilty plea in hopes of obtaining a favorable result. Moreover, while defendant has received the benefit of a lesser prison sentence, if he were permitted to withdraw his plea at this stage, the State could be subjected to hardship on remand for trial since over 13 years have elapsed from the date of the offenses. Unlike *Donelson*, defendant's negotiated sentence is unable to be reformed, but we conclude the doctrine of

estoppel should prohibit defendant from challenging a sentence after he has already received the benefit of a more lenient sentence.

¶ 40      In Illinois, "[t]he doctrine of judicial estoppel prohibits a party from assuming a position in a legal proceeding that is contrary to a position it held in a prior legal proceeding." *Dumke v. City of Chicago*, 2013 IL App (1st) 121668, ¶ 31; see also *People v. Caballero*, 206 Ill. 2d 65, 80 (2002). "It is designed to promote the truth and to protect the integrity of the court system by preventing litigants from deliberately shifting positions to suit the exigencies of the moment." *Bidani v. Lewis*, 285 Ill. App. 3d 545, 550 (1996). "The doctrine of judicial estoppel rests not upon due process concerns, but 'upon public policy which upholds the sanctity of the oath and its purpose is to bar as evidence statements and declarations which would be contrary to sworn testimony the party has given in the same or previous judicial proceedings.' " *Caballero*, 206 Ill. 2d at 80 (quoting *Bidani*, 285 Ill. App. 3d at 549). The following elements are required for the doctrine to apply: (1) the party being estopped must have taken two positions; (2) the two positions must be inconsistent; (3) the positions must have been taken in separate judicial or quasi-judicial proceedings; (4) the party must have intended for the trier of fact to accept the truth of the facts alleged; and (5) the party must have succeeded in asserting the first position and received some benefit from it. *Caballero*, 206 Ill. 2d at 80.

¶ 41      "Estoppel by contract precludes parties to a valid instrument from denying its force and effect. However, a void agreement cannot be rendered enforceable by estoppel. Thus, an estoppel by simple contract generally cannot be predicated on a void or invalid contract unless, according to some authority, it has been fully executed." 31 C.J.S. *Estoppel and Waiver* § 71 (2013).

¶ 42      We are not aware of any Illinois case applying the doctrine of judicial estoppel or estoppel by contract to criminal defendants who are challenging sentences that are too lenient many years after they have entered into fully negotiated plea agreements. However, courts from other jurisdictions have recognized the prejudice to the State under these circumstances and have estopped defendants from enjoying the benefits of the negotiated plea agreement while simultaneously challenging their validity. See *Lee v. State*, 816 N.E.2d 35, 40 (Ind. 2004); *Rhodes v. State*, 240 S.W.3d 882, 889 (Tex. Crim. App. 2007); *Punta v. State*, 806 So. 2d 569, 571 (Fla. Dist. Ct. App. 2002); *Graves v. State*, 822 So. 2d 1089, 1092 (Miss. Ct. App. 2002); *People v. Hester*, 992 P.2d 569, 572 (Cal. 2000).

¶ 43      In *Lee*, the Indiana Supreme Court held that a "defendant 'may not enter a plea agreement calling for an illegal sentence, benefit from that sentence, and then later complain that it was an illegal sentence.' " *Lee*, 816 N.E.2d at 40 (quoting *Collins v. State*, 509 N.E.2d 827, 833 (Ind. 1987)). There, the defendant had pled guilty to robbery and in exchange for the plea, the State dismissed an allegation of habitual offender. After completion of his sentence, he was convicted of "dealing in cocaine" and was sentenced to 50 years for the dealing conviction and an additional term of 30 years as a habitual offender. The defendant in a postconviction petition sought to void his robbery plea agreement asserting that the sentence was void. *Lee*, 816 N.E.2d at 37.

     " '[D]efendants who plead guilty to achieve favorable outcomes give up a plethora of substantive claims and procedural rights, such as challenges to convictions that would

otherwise constitute double jeopardy. Striking a favorable bargain including a consecutive sentence the court might otherwise not have the ability to impose falls within this category.' " *Lee*, 816 N.E.2d at 40 (quoting *Davis v. State*, 771 N.E.2d 647, 649 n.4 (Ind. 2002)).

¶ 44      In *Rhodes*, the defendant sought to quash an enhancement based on his allegation that a prior judgment was void because he had received a concurrent sentence when the relevant statute required a consecutive sentence. The Texas Court of Criminal Appeals acknowledged two types of estoppel applicable to this situation. "Estoppel by judgment" means " '[o]ne who accepts the benefits of a judgment, decree, or judicial order is estopped to deny the validity or propriety thereof, or of any part thereof, on any grounds; nor can he reject its burdensome consequences.' " *Rhodes*, 240 S.W.3d at 891 (quoting 31 C.J.S. *Estoppel and Waiver* § 130 (2006)). The other, estoppel by contract, is "where a party who accepts benefits under a contract is estopped from questioning the contract's existence, validity, or effect." *Rhodes*, 240 S.W.3d at 891. The reviewing court considered cases from other jurisdictions that have adhered to the estoppel doctrine and concluded that the reasoning was persuasive. "A defendant who has enjoyed the benefits of an agreed judgment prescribing a too-lenient punishment should not be permitted to collaterally attack that judgment on a later date on the basis of the illegal leniency." *Rhodes*, 240 S.W.3d at 892.

¶ 45      As the Mississippi Court of Appeals reasoned in *Graves*:

"[A] defendant should not be allowed to reap the benefits of an illegal sentence, which is lighter than what the legal sentence would have been, and then turn around and attack the legality of the illegal, lighter sentence when it serves his interest to do so. Allowing such actions would reap havoc upon the criminal justice system in this state. For example, all subsequent convictions and sentences of that defendant which are reliant upon the conviction concomitant with the illegal sentence would have to be set aside. This would result in a number of enhanced and habitual offender sentences being set aside for the very offender who had already enjoyed greater leniency than the law allows." *Graves*, 822 So. 2d at 1092.

¶ 46      We find this approach to be well reasoned under the facts of this particular case. Here, defendant received the benefit of sentences without the 25-year firearm enhancements and he should be estopped from challenging a sentence that is too lenient. Defendant reaped the benefit of the lesser sentence and waited until more than a decade after the offenses occurred to attack his plea agreement with the claim he raises for the first time on appeal. Although courts would never hesitate to reduce a sentence entered in excess of statutory requirements, this is not such a case. Defendant has not cited, nor has our research disclosed, an Illinois case in which a defendant has been permitted to withdraw his plea entered nearly a decade earlier and some 13 years after the offenses occurred, because the sentence was not harsh enough. It defies logic to suggest that defendant actually wants to serve a longer prison sentence than the improper sentence he received without the firearm enhancement. Rather, defendant in this case is using the improper sentence as a vehicle to withdraw his guilty plea, 10 years after its entry, and go to trial. Defendant's belated challenge could harm the State because it might endure hardship if forced to prosecute the case, given the passage of time and the recollection of

witnesses. As the *Rhodes* court observed, "[i]f he agreed to the concurrent sentencing provision, then through his own conduct he helped procure and benefit from the illegality and he should not now be allowed to complain." *Rhodes*, 240 S.W.3d at 892. The same is true in the present case where defendant agreed to and benefitted from the lesser sentence of 35 years without the firearm enhancement, which would add at least 25 years to each conviction. Therefore, he should be estopped from asserting a contrary stance at this stage to suit his wish to withdraw his guilty plea.

¶ 47        We also point out that the defendant is essentially seeking a rescission of his contract with the State. Rescission is defined as:

> " 'To abrogate, annul, avoid, or cancel a contract; particularly, nullifying a contract by the act of a party. The right of rescission is the right to cancel (rescind) a contract upon the occurrence of certain kinds of default by the other contracting party. To declare a contract void in its inception and to put an end to it as though it never were. [Citation.] A "rescission" amounts to the unmaking of a contract, or an undoing of it from the beginning, and not merely a termination, and it may be effected by mutual agreement of parties, or by one of the parties declaring rescission of contract without consent of other if a legally sufficient ground therefor exists, or by applying to courts for a decree of rescission.' " *People v. Elliott*, 2012 IL App (5th) 100584, ¶ 17 (quoting Black's Law Dictionary 1306 (6th ed. 1990)).

¶ 48        " 'Generally, rescission means the cancelling of a contract so as to restore the parties to their initial status.' " *Horwitz v. Sonnenschein Nath & Rosenthal LLP*, 399 Ill. App. 3d 965, 973 (2010) (quoting *Puskar v. Hughes*, 179 Ill. App. 3d 522, 528 (1989)). " 'One seeking to rescind a transaction on the ground of fraud or misrepresentation must elect to do so promptly after learning of the fraud or misrepresentation, must announce his purpose and must adhere to it.' " *Freedberg v. Ohio National Insurance Co.*, 2012 IL App (1st) 110938, ¶ 27 (quoting *Mollihan v. Stephany*, 35 Ill. App. 3d 101, 103 (1975)). " 'An unreasonable delay in taking the necessary steps to set aside a fraudulent contract will have the effect of affirming it.' " *Id.* (quoting *Illinois State Bar Ass'n Mutual Insurance Co. v. Coregis Insurance Co.*, 355 Ill. App. 3d 156, 165 (2004)).

¶ 49        Here, defendant delayed nearly ten years from the entry of his guilty plea to seek to withdraw his plea because the lenient sentence does not comport with statutory guidelines. In essence, defendant is seeking to rescind his guilty plea as though it never existed and proceed with the case. However, the State, as the other party to the plea agreement, who has honored the plea agreement terms, cannot be restored to the same position because of the possibility that witnesses' recollection may have faded or witnesses may be unable to testify after the passage of time. Further, defendant is not alleging any fraud or misrepresentation by the State in his plea agreement. Defendant has not raised any allegations that his plea was involuntary or unknowing. In fact, defendant received the benefit of the bargain regarding the agreed-to sentence. In essence, he is seeking to withdraw his plea because he was not punished enough, which should not, under these particular facts, be a basis to rescind the plea agreement. Defendant wants to begin anew because the agreed sentence is less than what is statutorily

required. Thus, defendant has not set forth a legally sufficient basis to rescind his plea agreement.

¶ 50     We acknowledge the finding in *People v. Arna*, 168 Ill. 2d 107, 113 (1995), that "[a] sentence which does not conform to a statutory requirement is void." But *Arna* presented a different situation in which a defendant improperly received concurrent sentences instead of consecutive sentences after a trial and the appellate court corrected this error on direct appeal, which the supreme court affirmed. *Arna*, 168 Ill. 2d at 112-13. Further, the defendant in *White* essentially sought a rescission of his plea agreement when he filed a motion to withdraw his guilty plea within 30 days of its entry. *White*, 2011 IL 109616, ¶ 9. In contrast, the parties in the instant case entered into a plea agreement and defendant benefitted from a more lenient sentence for nearly a decade before seeking to rescind the plea agreement. Defendant's unreasonable delay in seeking a remedy should preclude him from what amounts to a rescission of the plea agreement.

¶ 51     In light of the foregoing, we affirm the order of the circuit court of Cook County denying defendant's petition for postconviction relief after an evidentiary hearing.

¶ 52     Affirmed.